IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| IAMS FUNERAL HOME, INC. | ) CASE NO. 07-1397 |
| | ) |
| Debtor. | ) Chapter 11 |

## MEMORANDUM OPINION

The Attorney General of the State of West Virginia (the "Attorney General") seeks entry of an order that (1) declares all preneed funeral contracts held by Iams Funeral Home, Inc. (the "Debtor"), to be excepted from property of the Debtor's bankruptcy estate; and (2) confirms that the automatic stay of the Bankruptcy Code does not apply to litigation initiated by the Attorney General against the Debtor in State court for alleged violations of the West Virginia Preneed Funeral Contracts Act, W. Va. Code § 47-14-1 *et seq.*, and the West Virginia Consumer Credit and Protection Act, § 46A-1-101 *et seq*. The Debtor opposes the relief sought by the Attorney General and seeks damages to vindicate the Attorney General's alleged breaches of the Bankruptcy Code's automatic stay.

The court held a hearing in this case on November 19, 2007, and on November 20, 2007, the court entered an order declaring that the Attorney General's State court litigation was excepted from the automatic stay of the Bankruptcy Code. Because the court found that the automatic stay did not apply with respect to the litigation, the court also denied the Debtor's motion for damages based on the alleged stay violations. Given the court's disposition of the matter, the court did not address whether or not the preneed contracts held by the Debtor were property of the Debtor's bankruptcy estate. On November 30, 2007, the Debtor appealed the court's determinations. This Memorandum Opinion memorializes the

1

court's ruling from the bench.

## I. BACKGROUND

The Debtor operates a funeral home in New Martinsville, West Virginia. The Debtor performs about 20-30 "at-need" funeral contracts per year, and before 2006, the Debtor also sold "preneed" funeral contracts under the West Virginia Preneed Funeral Contracts Act, W. Va. Code § 47-14-1. Currently, the Debtor has about 41 preneed contracts that were sold before 2006 (worth about $239,562), many of which will become due in the next five to ten years. Preneed funeral contracts are specifically defined by statute to include:

> [A]ny contract, agreement, mutual understanding, series or combination of contracts, agreements and mutual understandings, including a contract that is financed by the purchase of an insurance policy or annuity, under which, for a specified consideration paid in advance of death in a lump sum or by installments, a person promises to furnish or make available or provide funeral services, funeral goods or burial goods for use at a time determinable by the death of the contract beneficiary who is either named or implied therein.

§ 47-14-2(12).

When a preneed funeral contract is sold, ten percent of the contract may be retained by the seller to cover the seller's expenses. § 47-14-5(a)(1). All other amounts, within 30 days after receipt, are to be:

> deposited in this state: (I) In the name of a trustee who is a contract seller, provider or person making the preneed funeral contract available, in a state or federally chartered and insured bank, savings institution, building and loan institution located in this state or in a state or federally chartered credit union located in this state; or (ii) under the terms of a trust instrument entered into with a national or state bank having trust powers or a trust company located in this state. In the event a preneed funeral contract is funded by the purchase of an insurance policy or an annuity, the premiums paid on such insurance policy or annuity shall be deposited with an insurer licensed pursuant to the provisions of chapter thirty-three of this code.

§ 47-14-5(a)(3).

Disbursements from a preneed contract fund can only be made "by the trustee to the person named in the contract upon receipt of a certified photostatic copy of the death certificate of the contract beneficiary and evidence satisfactory to the trustee that the preneed funeral contract has been fully performed." § 47-

14-6(a). Preneed funeral contracts may be cancelled at any time by a writing, and all amounts placed in trust are to be returned to the buyer. § 47-14-6(b). In the event a buyer defaults on a contract, the contracts funds that have been paid are to be returned to the buyer. § 47-14-6(c). In the event that a contract seller violates the provision of Article 14, the contract buyer may recover all amounts paid to the seller. § 47-14-8(a). A contract purchaser also has the right to transfer the obligations of the seller to another person in the State of West Virginia. § 47-14-8(h).

On October 24, 2007, two days before the Debtor filed its Chapter 11 bankruptcy petition, the Attorney General filed a lawsuit in the Circuit Court of Wetzel County, West Virginia that asserts ten causes of action. Namely, the Attorney General accuses the Debtor of misappropriating the preneed funeral contract funds of four customers, being a provider of preneed contracts without a certificate of authority, failing to obtain a license from the Division, failing to submit customer pay fees to the Division, failing to file death beneficiary reports, failing to transfer preneed contracts on request, and conducting business in West Virginia without a business license. In addition to civil penalties and punitive damages, the Attorney General seeks to enjoin the Debtor from engaging in further business, and seeks a transfer of all the preneed funeral contracts currently held by the Debtor.

## II. DISCUSSION

The Attorney General asserts that the Bankruptcy Code's automatic stay does not apply to its State court action against the Debtor on the basis that the filing of its complaint falls under the police and regulatory power exception to the automatic stay. 11 U.S.C. §362(b)(4) (stating that the automatic stay does not apply to the "commencement or continuation of an action . . . by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power . . . ."). The Debtor responds that the preneed funeral contracts are property of its bankruptcy estate, they are essential to the future success of the Debtor, and any transfer of that property to competing funeral homes would be detrimental to the creditors of the Debtor's bankruptcy estate.

When an entity files a bankruptcy petition, an automatic stay applies with regard to eight different types of action. 11 U.S.C. § 362(a)(1-8). One of the primary purposes of the automatic stay "is to allow for a systematic, equitable liquidation proceeding by avoiding a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' " *Safety-Kleen, Inc. v.*

3

*Wyche*, 274 F.3d 846, 864 (4th Cir. 2001) (citation omitted). More specifically, prohibited actions include the "continuation . . . of a judicial . . . proceeding against the debtor that was . . . commenced before the commencement of a case under this title . . . ." 11 U.S.C. § 362(a)(1). Also prohibited is "any act to obtain possession of property of the estate or . . . to exercise control over property of the estate," and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case . . . ." § 362(a)(3), (6). However, under the express language of § 362(b)(4), none of the above three prohibitions apply to when a governmental unit is enforcing its police and regulatory power.

A state acts within its police and regulatory powers when it enforces "laws affecting the health, welfare, morals, and safety" of the public, or when it acts to "effectuate a public policy." *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1123 (9th Cir. 2006); *NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986). If, however, the action seeks to protect a state's pecuniary interest, then the § 362(b)(4) exception does not apply. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) ("The purpose of the 'pecuniary purpose' test is to prevent suits that would allow a governmental unit to obtain an advantage over creditors or potential creditors in the bankruptcy proceeding."). Likewise, the § 362(b)(4) exception does not apply if the State is seeking to adjudicate private, instead of public, rights. *Missouri v. U. S. Bankruptcy Court for E. D. of Arkansas*, 647 F.2d 768, 776 (8th Cir. 1981) ("We conclude that Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health . . . . and, therefore, do not fall within the section 362(b)(4) exception."). When a state seeks to enforce a law that serves a dual purpose of promoting the public welfare and protecting the state's pecuniary interest "the court 'must determine the primary purpose of the law that the state is attempting to enforce,' and if the primary purpose of the law is to promote the public welfare, then the exception in section 362(b)(4) is applicable even though the law also has a pecuniary purpose as well." *In re Cutting Edge Enter., Inc.*, 372 B.R. 255, 262 (Bankr. M.D.N.C. 2007) (quoting *Safety-Kleen, Inc.*, 274 F.3d at 865).

The Attorney General is given statutory standing to vindicate violations of the Preneed Funeral Contracts Act and the West Virginia Consumer Credit and Protection Act. W. Va. Code §§ 47-14-11(b) ("Upon the violation of any of the provisions of this article . . . the division may . . . file a complaint in a

4

court of competent jurisdiction. . . ."); 47-14-2(5) (reciting that the term "Division" means the Consumer Protection Division of the Office of the Attorney General); 46A-7-108 ("The attorney general may bring a civil action to restrain a person from violating this chapter and for other appropriate relief."). *See also State ex rel. McGraw v. Imperial Mktg.*, 506 S.E.2d 799 (W. Va. 1998) (stating that the use of phrase "other appropriate relief" indicates that the legislature meant the full array of equitable relief to be available in suits brought by the Attorney General).

Pursuant to these statutory powers, the Attorney General filed its lawsuit against the Debtor in the Circuit Court of Wetzel County on October 24, 2007. The complaint alleges, *inter alia*, that the Debtor violated the Preneed Funeral Contracts Act and the West Virginia Consumer Credit and Protection Act by (1) misappropriating the monies paid by consumers for preneed funeral contracts; (2) failing to file required documentation with the State, and (3) failing to obtain required licenses to do business. The Attorney General seeks injunctive relief prohibiting the Debtor from selling, maintaining, and performing preneed contracts, a transfer of all open preneed contracts, civil penalties, costs, and punitive damages. The order entered by the court on November 19, 2007, only allows the Attorney General to proceed with its civil action against the Debtor "up to and through the entry of judgment and the enforcement of any non-money judgment entered in favor of the Attorney General." The court's order does not allow the Attorney General to collect on any monetary judgment it may obtain; rather, such a money judgment would be asserted against the Debtor's bankruptcy estate and paid, according to priority, along with the Debtor's other creditors.

Viewing the Attorney General's complaint against the Debtor as a whole, the court concludes that its primary purpose is to enforce laws affecting the health, welfare, morals, and safety of the public and/or to effectuate the public policy of the State of West Virginia. Importantly, the Attorney General is not seeking to collect on a money judgment or to collect a pre-existing debt. The Attorney General has no pecuniary interest in the value of the Debtor's preneed contracts, or in terminating the Debtor's business. The Attorney General is not attempting to seize property in satisfaction of a pre-existing obligation. Likewise, the Attorney General is not primarily seeking to enforce its private rights against the Debtor; rather, the Attorney General is acting to protect the consumers of West Virginia from a business entity that allegedly has engaged in unfair and deceptive trade practices, that has failed to file required documentation

5

with the State, and that has engaged in business without a license. In the words of the Attorney General, "when funeral homes don't comply with the legal requirements, the Attorney General has no choice but to take action." Of course, the ultimate merits of the allegations in the Attorney General's complaint are to be determined by the Circuit Court of Wetzel County, West Virginia.

The Debtor argues that the preneed funeral contracts are property of the bankruptcy estate under 11 U.S.C. § 541(a), and that this court should not cede control over property of the estate to a non-bankruptcy court. This argument, however, is ineffectual.[1] To the extent that the preneed contracts may constitute property of the estate, 11 U.S.C. § 362(b)(4) expressly provides that no prohibition exists to the Attorney General exercising control over property of the estate when the Attorney General's action is brought under the State's police and regulatory powers. *E.g.*, 3 *Collier on Bankruptcy* ¶ 362.05[5][b] (15th ed. rev. 2007) (stating that § 362(b)(4) allows governmental units to enforce non-monetary judgments against property of the estate). Moreover, 28 U.S.C. § 959 requires that the Debtor operate according to the requirements of the valid laws of the state in which the Debtor's property is located. Thus, the Attorney General may obtain and enforce orders requiring the Debtor to take certain actions, or to cease engaging in certain actions, even if the effect of the order is to impose a monetary cost on the estate. *E.g.*, *Saravia v. 1736 18th Street, N.W., Ltd. Partnership*, 844 F.2d 823, 826 (D.C. Cir. 1988) ("Congress explicitly stated that debtors-in-possession are not exempted from local law by virtue of federal bankruptcy law; rather, debtors are to 'manage and operate the property . . . according to the valid laws of the [jurisdiction] in which such property is situated. . . .'") (citation omitted).

### III. CONCLUSION

The court is fully aware of the effect that its decision may have on the Debtor's bankruptcy case. As stated by the Debtor, its ability to fulfill the preneed funeral contracts that it sold may be essential to its reorganization efforts. Also, the court is fully aware that many of the Debtor's customers are loyal, and do not want their final arrangements to be handled by anyone other than the Debtor. Notwithstanding the foregoing, the court does not believe that it can use its equitable powers to ignore the plain language of §

---

[1] Whether or not the preneed contracts currently held by the Debtor are property of the Debtor's bankruptcy estate is not an issue that is being decided by the court.

6

362(b)(4), or to allow the Debtor to operate in an alleged violation of State law by servicing preneed funeral contracts. Accordingly, the court entered its November 20, 2007 order declaring that the Attorney General's State court litigation was excepted from the automatic stay of the Bankruptcy Code, and denying the Debtor's claim for damages against the Attorney General for allegedly violating the automatic stay.